IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JUNE STONESTREET**                                                                 **PLAINTIFF**

v.                                                                                 CAUSE NO. 1:20cv65-LG-RPM

**UNITED STATES OF
AMERICA and JOHN DOES 1-5**                                                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER DENYING THE GOVERNMENT'S MOTION TO DISMISS AND <u>MOTION FOR SUMMARY JUDGMENT</u>

**BEFORE THE COURT** are the [98] Motion to Dismiss and the [100] Motion for Summary Judgment filed by the Government in this premises liability case. The plaintiff, June Stonestreet, has filed responses to both Motions, and the Government has filed replies. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the Motion to Dismiss should be denied because the independent contractor and discretionary function exceptions to the Government's waiver of sovereign immunity do not apply to Stonestreet's claims. The Government's Motion for Summary Judgment is denied because a reasonable jury could find that the Government failed to keep its premises in a reasonably safe condition.

### BACKGROUND

Stonestreet suffered injuries in a fall at the Keesler Air Force Base Commissary in Biloxi, Mississippi, on May 3, 2018, near the close of business at 7:00 p.m. Stonestreet claims that the commissary's egg rack rolled while she was reaching for eggs on the top shelf, causing her to fall into the store's cooler. The

commissary is operated by the Government's Defense Commissary Agency ("DeCA"). The DeCA had entered into a Brand Name Resale Ordering Agreement with Eggland's Best, Inc., that provided that Eggland's responsibility included:

> pulling cases of product from a warehouse or holding area utilizing a stocking cart to deliver products to the sales floor at designated times, opening cases and stocking products on retail shelving. Products are required to be properly merchandized whereby the product is lined up and/or stacked with labels facing forward. The designated space as identified by the product label should be filled to the maximum extent possible within a full case. Product must be properly rotated to preclude out-of-date situations and stocked as frequently as necessary to ensure adequate product availability during store operating hours.

(Def.'s Mot., Ex. C at 9-10, ECF No. 98-3).

Stonestreet filed this lawsuit against the Government pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. She alleges that the Government was negligent in, *inter alia*, failing to provide a safe environment for invitees, failing to inspect for dangerous conditions, and failing to properly train, hire, and/or supervise employees to ensure that the premises was safe for invitees.

## DISCUSSION

## I. THE GOVERNMENT'S MOTION TO DISMISS

The Government seeks dismissal of this lawsuit pursuant to Fed. R. Civ. P. 12(b)(1) because it claims it has not waived its sovereign immunity. The Government argues, "Because independent contractors rather than the government employees were responsible for delivering eggs and stocking the egg cart at issue, the [G]overnment has not waived its sovereign immunity." (Def.'s Mem. at8, ECF No. 99. The Government also argues that the FTCA's discretionary function

exception limits the Government's waiver of sovereign immunity here because "the [G]overnment's act of engaging an independent contractor to deliver and stock eggs within the Commissary involves judgment or choice" and the Government's decision to enter into the Eggland's Best contract was based on economic and policy considerations.

> The Fifth Circuit has explained:
>
> [T]he United States, as sovereign, is immune from suits save as it consents to be sued. Pursuant to the FTCA, Congress has waived sovereign immunity and has granted consent for the government to be sued for acts committed by any employee of the Government while acting within the scope of his office or employment. The FTCA, however, does not cover acts committed by independent contractors.

*Creel v. United States*, 598 F.3d 210, 213 (5th Cir. 2010). Meanwhile, the discretionary function exception to the FTCA waiver of sovereign immunity applies "when the plaintiff's claim is based on an act by a government employee that falls within the employee's discretionary authority." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016). "Whether an official's actions fall within the exception involves two inquiries: (1) the conduct must be a matter of choice for the acting employee; and (2) the judgment must be of the kind that the discretionary function exception was designed to shield." *Id.* (internal citations and quotation marks omitted).

The independent contractor exception applies "only to the extent that the claims arise from the duties delegated" to an independent contractor. *Verizon Washington, D.C., Inc. v. United States*, 254 F. Supp. 3d 208, 219 (D.D.C. 2017). In the present case, the Government delegated the duty of stocking the egg carts to

Eggland's. The independent contractor exception does not apply to Stonestreet's claims because she is not suing the Government for Eggland's alleged negligence; she is suing the Government for the alleged negligence of its own employees. For example, Stonestreet asserts that the Government failed to maintain its premises in a reasonably safe condition, failed to adequately inspect its premises, and failed to properly train and supervise its employees. As the Ninth Circuit has explained,

> The independent contractor exception . . . has no bearing on the United States' FTCA liability for its own acts or omissions. Many cases recognize that it is not a defense, to liability for one's own negligence in connection with an actor whose conduct injured a third party, that the actor was not an agent or an employee, but rather an independent contractor. Even where an employer has delegated some responsibilities to an independent contractor, the employer may still be held separately and directly liable for its own negligence. Thus, a determination that the United States has declined to exercise control over the day-to-day operations of its contractor is not the end of the analysis. We must also determine whether Plaintiffs have alleged a separate nondelegable or undelegated duty, which the United States could be held directly liable for breaching. Only upon a finding that the government delegated its entire duty of care may the court dismiss the claim for lack of jurisdiction under the FTCA's independent contractor exception.

*Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016). Under Mississippi premises liability law, a plaintiff must demonstrate that the premises owner either negligently created the condition that caused the plaintiff's injury or failed to remedy the dangerous condition after receiving actual or constructive knowledge. *Hearn v. Square Prop. Invs., Inc.*, 297 So. 3d 292, 295 (Miss. Ct. App. 2020). As explained in more detail below, a reasonable jury could find that the Government

had constructive notice of the dangerous condition of the cart and failed to remedy it. As a result, the independent contractor exception does not apply.[1]

As for the Government's arguments concerning the discretionary function exception, Stonestreet is not questioning the Government's decision to retain an independent contractor to stock eggs at the commissary. Her claims concern the alleged failure to inspect for and remedy dangerous conditions in the store. Therefore, the discretionary function exception does not apply. *See Gibson v. United States*, 809 F.3d 807, 813 (5th Cir. 2016) ("The Government's decisions about routine property maintenance, decisions with which any private landowner would be concerned, are not susceptible to the kind of policy analysis shielded by the discretionary function exception.").

Since neither the independent contractor exception nor the discretionary function exception apply, the Government has waived its sovereign immunity as to Stonestreet's FTCA claims. The Motion to Dismiss is denied.

## II. THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial

---

[1] The Government's briefing primarily concerns the nature of the contractual relationship between Eggland's and the Government, *i.e.* whether Eggland's was an employee or independent contractor, and the extent of control that the Government had over Eggland's work. In the present case, the nature of the relationship between Eggland's and the Government is not disputed; thus, it was not necessary for the Court to analyze the extent of control. *See Kwitek v. U.S. Postal Serv.*, 694 F. Supp. 2d 219, 226-27 (W.D.N.Y. 2010).

burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). Factual controversies are resolved in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The Government first argues that it is entitled to summary judgment because the egg cart was not a dangerous condition. The parties agree that Stonestreet was an invitee of the Commissary. Therefore, the Government had a duty to keep the premises in a reasonably safe condition and to warn Stonestreet of dangerous conditions that were not readily apparent. *See Venture, Inc. v. Harris*, 307 So. 3d 427, 433 (Miss. 2020). "The owner of a business is not . . . liable for injuries caused by conditions which are not dangerous." *Id.* at 433. The plaintiff "must prove one of the following to recover: (1) a negligent act of the defendant caused her injury; (2) the defendant had actual knowledge of the dangerous condition [and failed to warn her]; or (3) . . . the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant." *Hearn*, 297 So. 3d at 295.

In *Venture*, the plaintiff suffered injuries when she tripped over a temporary display rack in the aisle of a grocery store. The defendant argued that the rack was not dangerous, because it was "a condition that a shopper would expect to encounter in a grocery store and is not unusual or unreasonably dangerous." *Id.* at 434. The court explained that "a non-defective, temporary iron display rack would not typically constitute a dangerous condition. But its use, positioning and placement might." *Id.* at 435. The Mississippi Supreme Court held that summary judgment in favor of the defendant was inappropriate because there were fact questions regarding whether the placement of the rack was dangerous. *Id.*

The parties do not dispute that Stonestreet's accident occurred just before the store closed and that the egg cart was lightly stocked. Commissary employee Shawn Wilson testified that he saw Stonestreet after her fall, and she was inside the cooler from the waist up. (Pl.'s Mem., Ex. E at 65, ECF No. 104-5). He explained that the cart must have moved backwards in order for her to fall into the cooler. (*Id.* at 24). When she was asked to describe her accident, Stonestreet testified, "I just reached up to get the eggs off the top rack at the back of it, and I was in the floor inside the cooler the next thing I knew." (Def.'s Mot., Ex. B at 44, ECF No. 100-2). She explained that the eggs were sold out at the front of the cart, so she had to reach toward the back. (*Id.* at 50).

The Government has submitted an expert report prepared by Alex J. Balian, who has worked in the retail industry for sixty-five years. He explained that the carts like the one at issue in this lawsuit are commonly used in the supermarket

industry to display items like milk and eggs. (Def.'s Mot., Ex. F, ECF No. 100-6). He opined that "[t]he nature of these racks, due to the metal construction, are heavy and require considerable [sic] amount of effort to move with or without product." (*Id.*) He further opined:

> The wheels on these fixtures do not have wheel locks when in place and the weight alone would secure the rack from moving. The floor of the cooler also had an approximately ½" bracket attached to the front left metal frame leg. When the rack is pushed in place, the wheel of the rack, in front of the bracket, would be sufficiently secured in place in front of the reach-in window. Wheels [sic] locks on these racks although may [sic] possibly be available, are not a standard in the industry. The decision to use locks on these rack [sic] would be the decision of the vendor selling the product, not the supermarket. In this case, the attached bracket and the weight of the rack was sufficient to secure the fixture when given foreseeable customer activity. The expectation is that the rack may be touched by [sic] customer when purchasing eggs, but not leaned upon by the customer.

(*Id.*) He also claimed that there would be no need to inspect the positioning of the cart. (*Id.*)

Stonestreet has presented testimony from Eric White, a retail operations and retail leadership expert with twenty-three years of experience. (Pl.'s Mem., Ex., ECF No. 104-11). He opined that "the industry standard is to ensure that mobile merchandising displays are fully immobilized when they are within reach of customers" through the use of wheel locks, "wheel chalks," and other methods. (*Id.*) He believes that the carts should have been inspected multiple times a day. (*Id.*)

Commissary employees Shawn Wilson and Rodney Carter testified that the carts can easily be moved when they are not fully stocked. (Pl.'s Mem., Ex. E at 58,

ECF No. 104-5; Pl.'s Mem., Ex. G at 51-53, ECF No. 104-7).[2] Commissary employee Patrick Cute also testified that the carts have been moved by female commissary employees who are the same height as Stonestreet. (Pl.'s Mem., Ex. B at 44-45, ECF No. 104-2). Several employees believed that the carts should be checked at least once daily to ensure that they are in place, over the bracket described in Balian's report.[3] (Pl.'s Mem., Ex. B at 68, ECF No. 104-2; Def.'s Mot., Ex. D at 78, ECF No. 100-4; Pl.'s Mem., Ex. J at 90-91, ECF No. 104-10).

A genuine issue of material fact exists regarding whether the egg cart was a dangerous condition. The Court has been presented with vastly different expert opinions regarding whether the cart met industry standards. In addition, the Commissaries' employees acknowledged that the cart should be inspected daily, and it should be placed in front of the bracket or lip to prevent it from moving. The Government has not produced any evidence or testimony regarding whether the cart was inspected or placed in front of the bracket on the date of the accident. A reasonable jury could find that the cart was not properly placed in the cooler area since it rolled when Stonestreet reached for eggs. As in *Venture*, the egg cart itself may not have been a dangerous condition, but a fact question exists regarding

---

[2] Carter testified that the racks have locks on them, but other employees testified that they did not know whether the racks had locks on them. The majority of commissary employees testified that they viewed the bracket on the cooler floor as the safety mechanism responsible for keeping the racks from rolling. Carter believes that the lip or bracket is not tall enough to prevent the rack from moving. (Pl.'s Mem., Ex. G at 64, ECF No. 104-7).
[3] Commissary employees often call the bracket a "lip."

whether its placement and use constituted a dangerous condition. *See Venture*, 307 So. 3d at 433.

The Government also argues that it did not create a dangerous condition and had no actual or constructive notice of a dangerous condition. The Government claims that the placement of the cart was the responsibility of Eggland's since it was responsible for stocking the eggs. However, Commissary employees testified that they sometimes move the egg carts in order to clean them, and they perform stocking when supplies get low during the day. Even if Eggland's had improperly placed the cart in the cooler, the Government can still be liable if it had constructive knowledge of the dangerous condition.

> Constructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of its existence. Further, the court will not indulge presumptions for the deficiencies in plaintiff's evidence as to the length of time the hazard existed; therefore, the plaintiff must produce admissible evidence as to the time period in order to establish the operator's constructive knowledge. The plaintiff must present specific proof as to the relevant actual length of time.

*Hearn*, 297 So. 3d at 296 (citations and quotation marks omitted). Multiple commissary employees testified that vendors stock products at night, after the store closes. (Pl.'s Mem., Ex. B at 39-40, ECF No. 104-2; Pl.'s Mem., Ex. E at 44, ECF No. 104-5). The parties agree that Stonestreet's accident occurred near the close of business. Therefore, several hours had passed between the vendors handling the carts and Stonestreet's accident. A reasonable jury could find that the Government had constructive knowledge that the cart was not secure.

Furthermore, "[n]egligence may be found from circumstantial evidence of adequate probative value." *Clinton Healthcare, LLC v. Atkinson*, 294 So. 3d 66, 72 (Miss. 2019).

> [T]he plaintiff may prove circumstances from which the jury might conclude reasonably that the [dangerous condition] was one which was traceable to the proprietor's own act or omission, in which no proof of notice is necessary. Juries may reasonably infer the existence of one fact from the existence of another fact or set of facts. Verdicts may rest upon reasonable probabilities.

*Id.* (citations and quotation marks omitted). The record reflects that the cart was placed at the door of the cooler by either Eggland's or Commissary employees. As explained previously, if Eggland's placed the cart, a jury could find that the Government had constructive knowledge. If Commissary employees placed the cart, then a jury could find that the Government created the dangerous condition.

The Government next argues that Stonestreet had a duty to exercise reasonable care. The Government produced testimony that no other person has ever fallen while trying to reach for eggs at the Commissary. It also points out that Stonestreet did not ask for help in reaching the eggs. The Government argues:

> The only rational conclusion that a factfinder can draw from these facts is that Plaintiff failed in her duty to engage with the egg cart in a way that other prudent and intelligent people would (e.g., by leaning heavily upon the cart, by climbing on the cart, or through some other imprudent means). The Commissary had no duty to foresee such unusual or imprudent interactions with its egg cart, especially given that it had no knowledge of any similar, prior event.

(Gov.'s Mem. at 17, ECF No. 101). First, Mississippi is a comparative negligence state, so any negligence on the part of Stonestreet will not necessarily defeat her claims. Second, Commissary employees testified that the cart can be easily moved

-11-

if it is not fully stocked or if it is not placed in front of the lip.  Therefore, a reasonable jury could find that Stonestreet did not mishandle the cart.  Third, Commissary employee Rodney Carter testified that he believes the carts should be locked because of customer behavior that he has witnessed concerning the egg cart. (Pl.'s Mem., Ex. G at 74-76, ECF No. 104-7).  For example, he has seen children trying to climb on the carts, and adults sticking their heads and arms far into the carts to reach fresh eggs at the back.  He has even seen customers try to move the carts.  Stonestreet has also presented expert testimony that it is the industry standard for carts accessible to customers to be locked or otherwise immovable.  As a result, the questions of whether the Government followed industry standards and whether the Government was on notice that the cart was dangerous should be resolved by a jury.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss and Motion for Summary Judgment must be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [98] Motion to Dismiss and the [100] Motion for Summary Judgment filed by the Government are **DENIED**.

**SO ORDERED AND ADJUDGED** this the 6th day of October, 2021.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE